UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-23493

GEMMA BADING,

      Plaintiff,

v.

CARNIVAL CORPORATION & PLC,

      Defendant.

_____/

**COMPLAINT FOR DAMAGES**
**AND DEMAND FOR TRIAL BY JURY**

    Plaintiff, GEMMA BADING (hereinafter "BADING"), through undersigned counsel, sues Defendant, CARNIVAL CORPORATION & PLC, (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

    1.    BADING seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

    2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

    3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

    4.    Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

    5.    BADING is *sui juris* and is a resident and citizen of the state of Texas.

6.     CARNIVAL is a citizen of the state of Florida and the nations of Panama and the United Kingdom.

7.     CARNIVAL is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8.     CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

      a.     Operated, conducted, engaged in, or carried on a business venture; and/or

      b.     Had an office or agency; and/or

      c.     Engaged in substantial activity; and/or

      d.     Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.     Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the shower, drain, and the surrounding area involved in BADING's incident, and all material and effects pertaining thereto, including any material that was applied or that should have been applied, and/or other parts thereof, the area and drain's design and/or visual condition, and/or any other applied, adhesive, and/or other material.

11.     At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in BADING'S incident.

12.    BADING'S incident occurred on or about July 3, 2022, while she was a fare paying passenger on CARNIVAL'S vessel, the *Vista*.

13.    At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Vista*.

14.    On or about July 3, 2022, between approximately 6:00 p.m. and 8:00 p.m., BADING was taking a shower in her cabin, number 9221, in a normal and proper manner. There was murky water clogging in the shower. As BADING attempted to step out of the shower, her toe made contact with the unreasonably sharp, rusty, and elevated metal drain, and this severely cut her big toe. Upon closer inspection after the incident, the drain appeared to have been bent by a CARNIVAL crewmember to be more elevated than usual, presumably to allow more water to drain.

15.    As a result, BADING sustained severe injuries that include, but are not limited to, a severely cut toe, nerve damage, and other serious injuries.

16.    After BADING was taken to the ship's medical center by wheelchair between approximately ten to thirty minutes after her incident, the ship's doctor failed to diagnose her injuries, including her nerve damage to her toe. Furthermore, BADING asked the ship doctor for a tetanus shot, stitches, and sterile pads, but she refused to give them to her. Furthermore, the ship's doctor provided unreasonably weak and/or otherwise deficient antibiotics. Instead, the ship doctor applied steristrips and glue to the incision without cleaning her toe or applying any numbing medicine and told her to get off the ship to get it treated, which was not proper. Moreover, BADING was not prescribed pain medicine for her trip home, such that she was in great pain for a longer amount of time than she otherwise would have been.

 

17.    At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

    a.  The subject drain was unreasonably sharp, which caused BADING's toe to be cut when her foot made contact with it.

    b.  The subject drain was unreasonably raised/elevated, which caused BADING's toe to be cut more severely than it would have been had the drain been closer to flush with the floor, since her toe would have only been scratched, if injured at all, if the drain was closer to flush with the floor.

    c.  The subject drain was unreasonably rusty, which caused BADING's toe to be cut more severely than it would have been had the drain been less rusty, since the drain was not supposed to be as sharp as it was, but was made unreasonably sharp for reasons that include, but are not limited to, the unreasonable rustiness of the drain, which created jagged edges that cut BADING's toe.

    d.  There was no plastic and/or otherwise less sharp covering for the drain and/or material used for the composition of the drain itself, and had such less sharp

covering/material been used, BADING's toe would not have been cut as severe, if at all, due to the reduced sharpness.

e.   The subject drain, as well as the surrounding area, was obscured by the murky water that was clogging the shower, and lacked adequate visual cues (such as proper visual elements/coloring) to help passengers appreciate the danger of the subject drain. Had such visual cues been present, BADING would have appreciated the danger of the drain and avoided stepping near the drain, thereby preventing her incident.

f.   Other dangerous conditions that will be revealed through discovery.

18.   Each of these dangerous conditions alone was sufficient to and did cause BADING'S incident and injuries, and BADING is alleging that CARNIVAL was negligent as to each of these conditions alternatively.

19.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

a.   Upon closer inspection after the incident, the drain appeared to have been bent by a CARNIVAL crewmember to be more elevated than usual prior to BADING's incident, since it was bent at an unnatural angle, presumably to allow more water to drain due to the clogging, such that this crewmember knew of the unreasonable elevation of the subject drain prior to BADING's incident, and should have known of the unreasonable rustiness of the subject drain, and therefore also its unreasonable sharpness, as well.

b.   CARNIVAL participated in the installation and/or design of the subject area, or alternatively, CARNIVAL accepted the area with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the

subject drain, such that CARNIVAL should have known of the design defects of the subject drain and area before providing them for public use. These design defects include, but are not limited to, the dangers outlined in **paragraph 17** of this complaint.

c.   Both prior to and after the subject incident, CARNIVAL installed and/or refitted similar drains on other ships in CARNIVAL'S fleet to make them less slippery.

d.   There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in **paragraph 17** of this Complaint, and CARNIVAL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for CARNIVAL to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done.

e.   CARNIVAL also knew or should have known of these dangerous conditions through inspecting the subject area involved in BADING'S incident, and if it did not know of these dangerous conditions, this was because CARNIVAL failed to adequately inspect the subject area prior to BADING's incident.

f.   Previous passengers suffered incidents involving similar drains, including, but not limited to *Offenberg v. Carnival Corp*., No. 1:19-CV-23334-KMM, 2021 WL 4990899, at *2 (S.D. Fla. July 27, 2021) ("[I]ncident involving a passenger who injured her foot on the drain cover[.]"), and *Prince-Bowers v. Carnival Corp.*, No. 18-22526-CIV, 2018 WL 6426409, at *1 (S.D. Fla. Dec. 7, 2018) ("[T]h[e] [incident]

was a result of the drain being 'backed-up[.]'"),
http://www.miamiherald.com/news/business/tourism-cruises/article194984359.html.

g.   Moreover, CARNIVAL knew or should have known of these dangerous conditions
for other reasons that will be revealed through discovery.

20.   At all times relevant, the subject area was unreasonably dangerous, risk-creating,
defective, improperly designed, improperly installed, and/or otherwise unsafe.

21.   The subject area and the vicinity lacked adequate safety features to prevent or minimize
BADING'S incident and/or injuries.

22.   These hazardous conditions were known, or should have been known, to CARNIVAL
in the exercise of reasonable care.

23.   These hazardous conditions existed for a period of time before the incident.

24.   These conditions were neither open nor obvious to BADING.

25.   At all times relevant, CARNIVAL failed to adequately inspect the subject area and the
vicinity for dangers, and CARNIVAL failed to adequately warn BADING of the dangers.

26.   At all times relevant, CARNIVAL had the ability to cure the deficiencies and to eliminate
the hazards, but failed to do so.

27.   At all times relevant, CARNIVAL failed to maintain the subject area and the vicinity in
a reasonably safe condition. For example, CARNIVAL failed to perform regular upkeep on the
subject drain, including, but not limited to, applying anti-rust materials/measures to it, such that it
became unreasonably rusty, with jagged sharp edges, which caused BADING's incident for the
reasons previously discussed. This failure to maintain is only an example, and CARNIVAL failed
to maintain the subject area and the vicinity in other ways as well.

28.    At all times relevant, CARNIVAL participated in the design and/or approved the design of the subject area and the vicinity involved in BADING'S incident.

29.    At all times relevant, CARNIVAL participated in the installation and/or approved the installation of the subject area and the vicinity involved in BADING'S incident.

30.    The crewmembers of the *Vista* were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers.

31.    CARNIVAL's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and CARNIVAL had the right to hire and fire its crewmembers, employees, and/or agents.

32.    CARNIVAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

33.    The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

34.    The crewmembers were represented to BADING and the ship's passengers as employees of CARNIVAL through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or hourly wage by CARNIVAL. CARNIVAL knew that the crewmembers represented themselves to be employees of CARNIVAL and allowed them to represent themselves as such. BADING detrimentally relied on these representations as BADING would not have proceeded on the subject cruise had BADING believed the crewmembers were not employees of CARNIVAL.

## COUNT I
## NEGLIGENT FAILURE TO INSPECT

35.    BADING hereby adopts and re-alleges each and every allegation in paragraphs 1-26

and 30-34, as if set forth herein.

36.   CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

37.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

38.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL breached the duty of reasonable care owed to BADING and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the unreasonably risk creating and/or dangerous conditions discussed **paragraph 17** of the instant Complaint were present at the time of BADING'S incident.

39.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

40.   These risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

41.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

42.   CARNIVAL'S negligence proximately caused BADING great bodily harm in that,

but for CARNIVAL'S negligence, BADING'S injuries would not have occurred.

43.     As a result of CARNIVAL'S negligence, BADING has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BADING'S vacation, cruise, and transportation costs.

44.     The losses are permanent and/or continuing in nature.

45.     BADING suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GEMMA BADING, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that BADING will suffer and incur in the future, as a result of BADING's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of BADING'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## <u>NEGLIGENT FAILURE TO MAINTAIN</u>

46.     BADING hereby adopts and re-alleges each and every allegation in paragraphs 1-24, 26-27, and 30-34, as if set forth herein.

47.     CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

48.     This duty includes, but is not limited to, the duty to provide its passengers reasonable

care by adequately maintaining the subject area and the vicinity.

49.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to BADING and were negligent by failing to adequately maintain the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed **paragraph 17** of the instant Complaint were present at the time of BADING'S incident.

50.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant complaint.

51.   Moreover, these risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately maintain the subject area and the vicinity.

52.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

53.   CARNIVAL'S negligence proximately caused BADING great bodily harm in that, but for CARNIVAL'S negligence, BADING's injuries would not have occurred.

54.   As a result of CARNIVAL'S negligence, BADING has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BADING'S vacation, cruise, and transportation costs.

55.     The losses are permanent and/or continuing in nature.

56.     BADING has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, GEMMA BADING, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that BADING will suffer and incur in the future, as a result of BADING's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of BADING'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## <u>NEGLIGENT FAILURE TO REMEDY</u>

57.     BADING hereby adopts and re-alleges each and every allegation in paragraphs 1-24, 26, and 30-34, as if set forth herein.

58.     CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

59.     This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

60.     At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to BADING and were negligent by failing to adequately remedy the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed in **paragraph 17** of the instant Complaint were

present at the time of BADING'S incident.

61.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

62.   Moreover, these risk-creating and/or dangerous conditions were caused CARNIVAL'S failure to adequately remedy the subject area.

63.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

64.   CARNIVAL'S negligence proximately caused BADING great bodily harm in that, but for CARNIVAL'S negligence, BADING's injuries would not have occurred.

65.   As a result of CARNIVAL'S negligence, BADING has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BADING'S vacation, cruise, and transportation costs.

66.   The losses are permanent and/or continuing in nature.

67.   BADING has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, GEMMA BADING, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that BADING will suffer and incur in the future, as a result of BADING's

bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of BADING'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IV**
**NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION**

68.    BADING hereby adopts and re-alleges each and every allegation in paragraphs 1-24 and 30-34, as if set forth herein.

69.    At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including BADING.

70.    Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to BADING.

71.    Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

72.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to BADING and was negligent by failing to warn BADING of the dangerous conditions discussed in **paragraph 17(a-d and f)** of the instant Complaint.

73.    Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 19 of this Complaint.

74.    These dangerous conditions were also created by CARNIVAL.

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 14 of 32**

75.   CARNIVAL failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or CARNIVAL failed to warn BADING despite knowing of the dangers.

76.   These dangerous conditions existed for a period of time before the incident.

77.   These conditions were neither open nor obvious to BADING.

78.   CARNIVAL'S breach was the cause in-fact of BADING'S great bodily harm in that, but for CARNIVAL'S breach BADING's injuries would not have occurred.

79.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

80.   CARNIVAL'S breach proximately caused BADING great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

81.   As a result of CARNIVAL'S negligence, BADING has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BADING'S vacation, cruise, and transportation costs.

82.   The losses are permanent and/or continuing in nature.

83.   BADING has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GEMMA BADING, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for

damages and costs that BADING will suffer and incur in the future, as a result of BADING's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of BADING'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT V
## NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY

84.   BADING hereby adopts and re-alleges each and every allegation in paragraphs 1-24, 26, and 28-34, as if set forth herein.

85.   At all times material hereto, CARNIVAL owed a duty to its passengers, and in particular a duty to BADING, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in **paragraph 17** in the instant Complaint, as well as to design and install reasonable safeguards.

86.   At all times material hereto, CARNIVAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which BADING was injured into the channels of trade, and/or CARNIVAL approved of the subject vessel's design, including the design of the subject area and the vicinity.

87.   At all times material hereto, CARNIVAL manufactured, designed, installed, and/or approved of the *Vista*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to BADING, to design, install and/or approve of the subject area and the vicinity without any defects.

88.     At all times material hereto, CARNIVAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CARNIVAL, designed, installed, and/or approved of the subject area and the vicinity involved in BADING'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

89.     CARNIVAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

90.     CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Vista*, during the new build process.

91.     CARNIVAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

92.     CARNIVAL has the right to inspect and reject design elements before taking possession of the ship.

93.     However, CARNIVAL permitted the dangerous conditions discussed in **paragraph 17** of the instant complaint to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

94.     Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 19 of this Complaint.

95.     The design flaws that made the subject area and the vicinity involved in BADING'S incident unreasonably dangerous were the direct and proximate cause of BADING'S injuries.

96.     CARNIVAL is liable for the design flaws of the vessel, including of the subject area

and the vicinity involved in BADING'S incident, which it knew or should have known of.

97.   CARNIVAL failed to correct and/or remedy the defective conditions, despite the fact that CARNIVAL knew or should have known of the danger(s).

98.   CARNIVAL'S breach was the cause in-fact of BADING'S great bodily harm in that, but for CARNIVAL'S breach BADING's injuries would not have occurred.

99.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

100.  CARNIVAL'S breach proximately caused BADING great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

101.  As a result of CARNIVAL'S negligence, BADING has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BADING'S vacation, cruise, and transportation costs.

102.  The losses are permanent and/or continuing in nature.

103.  BADING has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GEMMA BADING, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that BADING will suffer and incur in the future, as a result of BADING's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish,

hospitalization, medical care and treatment, nursing care and treatment, loss of the value of BADING'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT VI
## NEGLIGENCE FOR THE ACTS OF CARNIVAL'S CREW, STAFF, EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY

104. BADING hereby adopts and re-alleges each and every allegation in paragraphs 1-34, as if set forth herein.

105. CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

106. The crewmembers who were and/or should have been responsible for inspecting, maintaining, cleaning, and/or securing the subject area, **including specifically the crewmember who unreasonably raised/elevated the subject drain**, were agents of CARNIVAL for the following reasons:

a.    They were the staff and/or employees of CARNIVAL, or were CARNIVAL'S agents, apparent agents, and/or servants; and/or

b.    These staff, employees, and/or agents were subject to the right of control by CARNIVAL; and/or

c.    These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d.    CARNIVAL acknowledged that these staff, employees, and/or agents would act on CARNIVAL'S behalf, and they accepted the undertaking.

107. CARNIVAL is vicariously liable for the acts of its staff, employees, and/or agents, as

discussed in **paragraph 17** of the instant complaint.

108. CARNIVAL is vicariously liable for the acts of its staff, employees, and/or agents, for failing to inspect and remedy the dangerous conditions discussed in **paragraph 17** of the instant complaint.

109. CARNIVAL is also vicariously liable for the acts of its staff, employees, and/or agents, for negligently maintaining and designing/approving of the dangerous conditions discussed in **paragraphs 17** of the instant complaint.

110. CARNIVAL is also vicariously liable for the acts of its staff, employees, and/or agents, for negligently failing to warn of the dangerous conditions discussed in **paragraphs 17(a-d and f)** of the instant complaint.

111. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

112. This negligence proximately caused BADING great bodily harm in that, but for this negligence, BADING'S injuries would not have occurred.

113. As a result of CARNIVAL'S negligence, BADING has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BADING'S vacation, cruise, and transportation costs.

114. The losses are permanent and/or continuing in nature.

115. BADING has suffered these losses in the past and will continue to suffer such loses

in the future.

**WHEREFORE**, Plaintiff, GEMMA BADING, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that BADING will suffer and incur in the future, as a result of BADING's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of BADING'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT VII
## <u>VICARIOUS LIABILITY AGAINST CARNIVAL FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF</u>

116. BADING hereby adopts and re-alleges each and every allegation in paragraphs 1 through 16 and 30-34, as if set forth herein.

117. CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

118. Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

119. At all times material, the ship's medical staff (including its physicians and nurses), and the ship's crew, were full-time employees and agents of CARNIVAL, subject to its direction and control, who were engaged in the activity of discharging CARNIVAL'S obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

120.  CARNIVAL is estopped to deny that the ship's medical staff (including its physicians and nurses), and the ship's crew, were its agents and/or employees and/or servants.

121.  CARNIVAL directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

122.  CARNIVAL created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

123.  CARNIVAL pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

124.  CARNIVAL collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

125.  CARNIVAL'S marketing materials described the infirmary in proprietary language.

126.  The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the ship's physicians) were members of the ship's officer's compliment, and at all times they were subject to termination, or other discipline, by CARNIVAL.

127.  CARNIVAL provided the ship's medical personnel and regular crew certain forms of liability insurance and/or indemnification rights.

128.  At all times material hereto, CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows:

   a.  The ship's doctor failed to diagnose BADING's injuries, including her nerve damage to her toe.

b.  Furthermore, BADING asked the ship doctor for a tetanus shot, stitches, and sterile pads, but she refused to give them to her.

c.  Furthermore, the ship's doctor provided unreasonably weak and/or otherwise deficient antibiotics.

d.  The ship doctor applied steristrips and glue to the incision without cleaning her toe or applying any numbing medicine and told her to get off the ship to get it treated, which was not proper.

e.  Moreover, BADING was not prescribed pain medicine for her trip home, such that she was in great pain for a longer amount of time than she otherwise would have been.

f.  CARNIVAL failed to promptly provide BADING with proper medical and/or first aid care and attention.

g.  CARNIVAL failed to timely and properly attend to BADING, to her injuries, and to her pain.

h.  CARNIVAL failed to provide reasonable medical and/or first aid care.

i.  CARNIVAL failed to timely and properly treat and care for BADING.

j.  CARNIVAL failed to timely and properly examine BADING'S injuries.

k.  CARNIVAL failed to take proper measures to secure proper treatment for BADING, including unreasonably delaying taking measures to secure such proper treatment.

l.  CARNIVAL failed to properly bring and/or arrange for BADING to be brought to a reasonable hospital/emergency room within a reasonable amount of time.

m.  CARNIVAL failed to give BADING proper discharge instructions.

129. **The standards of reasonable medical care under the circumstances required that CARNIVAL avoid the failures enumerated in the paragraph above**.

130.  Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

131.  Under the doctrine of *Respondeat Superior*, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of their employment and/or agency.

132.  CARNIVAL is therefore vicariously liable for all injuries and damages sustained by BADING as a result of the negligence of the ship's medical staff (including its physicians and nurses), and the ship's crew.

133.  At all times material hereto, the aforementioned acts and/or omissions on the part of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care.

134.  The negligence of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused BADING great bodily harm in that, but for CARNIVAL's negligence, BADING'S injuries would not have occurred and/or said injuries would have been substantially lessened.

135.  CARNIVAL, through its employees and agents, including the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

136.  As a result of CARNIVAL'S negligence, BADING has suffered severe bodily injuries

resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BADING'S vacation, cruise, and transportation costs.

137.  The losses are permanent and/or continuing in nature.

138.  BADING has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GEMMA BADING, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that BADING will suffer and incur in the future, as a result of BADING's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of BADING'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

### COUNT VIII
### APPARENT AGENCY
### FOR THE ACTS OF THE SHIP'S MEDICAL STAFF

139.  BADING hereby adopts and re-alleges each and every allegation in paragraphs 1 through 16 and 31-34, as if set forth herein.

140.  At all times material hereto, the ship's medical staff and regular crew represented to BADING and to the ship's passengers as employees and/or agents and/or servants of CARNIVAL, in that:

a.  The medical staff wore a ship's uniform;

b.  The medical staff ate with the ship's crew;

c.  The medical staff was under the commands of the ship's officers;

d.  The medical staff worked in the ship's medical department;

e.  The medical staff was paid a salary by CARNIVAL;

f.  The medical staff worked aboard the vessel;

g.  The medical staff spoke to BADING as though they had authority to do so by CARNIVAL.

141.  In addition, CARNIVAL further represented to BADING that the vessel's medical staff and regular crew were agents and/or employees of CARNIVAL through its marketing materials and through other official statements that described the infirmary in proprietary language, including language such as the "Carnival *Vista*'s Medical Center/our infirmary/our medical center," and through encouraging BADING to make use of "its" infirmary/medical center if BADING was in need of medical attention.

142.  Furthermore, at no time did CARNIVAL represent to BADING in particular, or the ship's passengers in general, in a meaningful way that the vessel's medical staff and regular crew were not agents or employees of CARNIVAL.

143.  At all material times, BADING reasonably relied on the representations to BADING'S detriment that the medical staff and regular crew were employees, and/or agents, and/or servants of CARNIVAL.

144.  It was reasonable to believe that the medical staff and regular crew were CARNIVAL'S agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by CARNIVAL.

145.  This reasonable reliance was detrimental because it delayed BADING from receiving

proper medical treatment and/or BADING would not have gone on the subject cruise with CARNIVAL had BADING known that the medical staff and regular crew on the ship were not CARNIVAL'S agents.

146. CARNIVAL is estopped to deny that the medical staff and regular crew were its apparent agents, and/or apparent employees, and/or apparent servants.

147. CARNIVAL had a duty to provide BADING with reasonable care under the circumstances and through the acts of its apparent agents breached its duty to provide BADING with reasonable care under the circumstances.

148. BADING'S injuries were aggravated due to the fault and/or negligence of CARNIVAL through the acts of its apparent agents as follows:

    a. The ship's doctor failed to diagnose BADING's injuries, including her nerve damage to her toe.

    b. Furthermore, BADING asked the ship doctor for a tetanus shot, stitches, and sterile pads, but she refused to give them to her.

    c. Furthermore, the ship's doctor provided unreasonably weak and/or otherwise deficient antibiotics.

    d. The ship doctor applied steristrips and glue to the incision without cleaning her toe or applying any numbing medicine and told her to get off the ship to get it treated, which was not proper.

    e. Moreover, BADING was not prescribed pain medicine for her trip home, such that she was in great pain for a longer amount of time than she otherwise would have been.

    f. CARNIVAL failed to promptly provide BADING with proper medical

and/or first aid care and attention.

g.   CARNIVAL failed to timely and properly attend to BADING, to her injuries, and to her pain.

h.   CARNIVAL failed to provide reasonable medical and/or first aid care.

i.   CARNIVAL failed to timely and properly treat and care for BADING.

j.   CARNIVAL failed to timely and properly examine BADING'S injuries.

k.   CARNIVAL failed to take proper measures to secure proper treatment for BADING, including unreasonably delaying taking measures to secure such proper treatment.

l.   CARNIVAL failed to properly bring and/or arrange for BADING to be brought to a reasonable hospital/emergency room within a reasonable amount of time.

m.   CARNIVAL failed to give BADING proper discharge instructions.

149.   **The standards of reasonable medical care under the circumstances required that CARNIVAL avoid the failures enumerated in the paragraph above**.

150.   Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

151.   As a result of CARNIVAL'S negligence, BADING has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BADING'S vacation, cruise, and transportation costs.

152.  The losses are either permanent or continuing in nature.

153.  BADING has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GEMMA BADING, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that BADING will suffer and incur in the future, as a result of BADING's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of BADING'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

### COUNT IX
### ASSUMPTION OF DUTY FOR THE
### NEGLIGENCE OF THE SHIP'S MEDICAL STAFF

154.  BADING hereby adopts and re-alleges each and every allegation in paragraphs 1 through 16 and 30-34 as if set forth herein.

155.  CARNIVAL owed BADING the duty to exercise reasonable care under the circumstances for the safety of its passengers.

156.  Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

157.  CARNIVAL elected to discharge this duty by having BADING seen by its own ship's physicians and/or other crew members.

158.  As such, CARNIVAL voluntarily assumed a duty for the benefit of BADING to use reasonable care in the provision of medical services to BADING.

159.  At all times material hereto, CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows:

    a.  The ship's doctor failed to diagnose BADING's injuries, including her nerve damage to her toe.

    b.  Furthermore, BADING asked the ship doctor for a tetanus shot, stitches, and sterile pads, but she refused to give them to her.

    c.  Furthermore, the ship's doctor provided unreasonably weak and/or otherwise deficient antibiotics.

    d.  The ship doctor applied steristrips and glue to the incision without cleaning her toe or applying any numbing medicine and told her to get off the ship to get it treated, which was not proper.

    e.  Moreover, BADING was not prescribed pain medicine for her trip home, such that she was in great pain for a longer amount of time than she otherwise would have been.

    f.  CARNIVAL failed to promptly provide BADING with proper medical and/or first aid care and attention.

    g.  CARNIVAL failed to timely and properly attend to BADING, to her injuries, and to her pain.

    h.  CARNIVAL failed to provide reasonable medical and/or first aid care.

    i.  CARNIVAL failed to timely and properly treat and care for BADING.

    j.  CARNIVAL failed to timely and properly examine BADING'S injuries.

    k.  CARNIVAL failed to take proper measures to secure proper treatment for

BADING, including unreasonably delaying taking measures to secure such proper treatment.

l.   CARNIVAL failed to properly bring and/or arrange for BADING to be brought to a reasonable hospital/emergency room within a reasonable amount of time.

m.   CARNIVAL failed to give BADING proper discharge instructions.

160.   **The standards of reasonable medical care under the circumstances required that CARNIVAL avoid the failures enumerated in the paragraph above**.

161.   At all times material hereto, the aforementioned acts or omissions on the part of CARNIVAL fell below the standard of care.

162.   CARNIVAL'S negligence proximately caused BADING great bodily harm in that, but for CARNIVAL'S negligence, BADING'S injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.

163.   CARNIVAL, through its employees and agents, to wit, the ship's medical staff and regular crew, knew, or should have known, that the medical and first aid procedures they employed violated reasonable standards of medical care.

164.   As a result of CARNIVAL'S negligence, BADING has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BADING'S vacation, cruise, and transportation costs.

165.   The losses are permanent and/or continuing in nature.

166.   BADING has suffered these losses in the past and will continue to suffer such loses

in the future.

**WHEREFORE**, Plaintiff, GEMMA BADING, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that BADING will suffer and incur in the future, as a result of BADING's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of BADING'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, GEMMA BADING, demands trial by jury on all issues so triable.

**Dated:** October 26, 2022.

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:     (305) 441.0440
F:     (305) 441.0198
***Attorneys for BADING***